UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD A. GARVAIS, JR.,**

    **Plaintiff,**

vs.

    Civil Action 2:09-cv-0389
    Judge Michael H. Watson
    Magistrate Judge E.A. Preston Deavers

**RELIANT INVENTORY SOLUTIONS INC.,** *et al.***,**

    **Defendants.**

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Defendant Reliant Inventory Solutions' Motion for Sanctions (Doc. # 72). Defendant specifically accuses Plaintiff's counsel Stephen Brown of interfering with third-party witness Monroe Hodges. The Court referred this matter to the undersigned to issue a Report and Recommendation for the disposition of Defendant's Motion for Sanctions. For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Defendant's Motion for Sanctions and Plaintiff's counter-request for attorneys' fees and costs.

### I. BACKGROUND

Plaintiff Richard A. Garvais, Jr. brings this action for breach of contract, accounting, declaratory judgment, and breach of fiduciary duty against Defendants Reliant Inventory Solutions Inc. (hereinafter "Solutions"), Reliant Inventory Services Inc., Barrett Hoffman (hereinafter "Hoffman"), and Steven Miller. (*See* Am. Compl.) Plaintiff specifically alleges that Defendants breached an employment agreement. (*Id.* at ¶¶ 10–15.) In their Motion for

Summary Judgment, Defendants raise issues regarding Plaintiff's relationship with Piggly Wiggly, a grocery store chain and customer of Defendant Solutions. (*See* Doc. # 58-1 at 7–8.)[1]

On June 24, 2010, Defendants filed their Response in Opposition to Plaintiff's Motion for Partial Summary Judgment (Doc. # 62). Defendants attached the unsigned Declaration of Monroe Hodges, an employee of Piggly Wiggly, to this filing.[2] (Doc. # 62-8.) On the same day, Defendant Solutions submitted a Motion for Extension of Time (Doc. # 63). In this Motion, Defendant Solutions explained that the Declaration was unsigned because Mr. Hodges was on vacation, but that Solutions had discussed the substance of the Declaration with Mr. Hodges, and, therefore, only a short extension of time was needed to have Mr. Hodges sign the document. (Doc. # 63 at 2.)

The undersigned held a telephone status conference on June 30, 2010. At the conference Defense counsel Barry Freeman sought sanctions, alleging that Plaintiff's counsel, Stephen Brown, had interfered with and impeded the testimony of Mr. Hodges. Mr. Freeman specifically alleged that Mr. Brown had intimidated Mr. Hodges, and that Mr. Hodges no longer was willing to execute the unsigned Declaration. Consequently, the undersigned ordered Defendants to file a motion for sanctions, and set a briefing schedule to resolve the issue. The Court referred this matter, pursuant to 28 U.S.C. § 636(b)(1)(B), to the undersigned to conduct a hearing and issue a Report and Recommendation regarding the disposition of the Motion for Sanctions. (Doc. # 69.)

---

[1] Because the docket reflects numerous filings relevant to Defendant's Motion for Sanctions, the Court will cite primarily to document numbers contained in the record for the sake of clarity.

[2] Plaintiff moved to strike the unsigned Declaration from the record, maintaining that Defendants had not properly disclosed Monroe Hodges as a witness in discovery. (Doc. # 64.) The Court has since stricken the unsigned Declaration from the record. (Doc. # 90.)

On July 9, 2010, Defendant Solutions filed its Motion for Sanctions (Doc. # 72).  In the Motion, Defendant maintains that Mr. Brown intimidated Mr. Hodges, and used Piggly Wiggly to restrain Mr. Hodges, in order to prevent Mr. Hodges from executing his Declaration.  (Doc. # 72-1 at 1.)  To support these accusations, Defendant Solutions relies on the Declaration of Defendant Hoffman as well as emails between Mr. Freeman and Mr. Brown.  In his Declaration, Defendant Hoffman details a call he received from Mr. Hodges in which Mr. Hodges expressed concern about signing the Declaration.  (Doc. # 67-1 at ¶¶ 3–9.)  According to Defendant Hoffman, Mr. Hodges' concern was the product of telephone calls from Mr. Brown as well as contact between Mr. Brown and other employees of Piggly Wiggly.  (*Id.*)  The emails consist of communications between Mr. Freeman and Mr. Brown regarding this matter shortly before the June 30, 2010 status conference.  (*See* Docs. # 72-6, 72-7.)

Plaintiff filed its Opposition to Defendant's Motion for Sanctions on July 16, 2010. (Doc. # 74.)  In an attached affidavit, Mr. Brown denied ever speaking with or emailing Mr. Hodges, and denied any improper conduct in this matter.  (Doc. # 74-1 at ¶¶ 8–9, 13.)  In his Opposition, Plaintiff maintains that Defendant's Motion for Sanctions is replete with no more than hearsay statements and in fact contained no admissible evidence of misconduct on the part of Mr. Brown.[3]  (Doc. # 74 at 5–7.)  Plaintiff and his counsel maintain that they are entitled to attorneys' fees and costs based on the behavior of Defendants and their counsel in pursuing sanctions.  (Doc. # 74 at 12.)

Because of the serious nature of the accusations of Defendant Solutions and its counsel,

---

[3] In its Reply, Defendant Solutions maintains, in part, that the Federal Rules of Evidence do not apply to the Court when considering whether to impose sanctions, and, therefore, the hearsay statements of Defendant Hoffman are admissible.  (Doc. # 75 at 6–7.)

3

the Court scheduled an evidentiary hearing for August 16, 2010. As the Motion for Sanctions centered around the conduct of Mr. Brown, the Court ordered him to appear at the hearing.

On August 13, 2010, Plaintiff submitted notice of the Affidavits of Monroe Hodges and Andreas Satterfield, counsel for Piggly Wiggly, to the Court. (Doc. # 78.) In his Affidavit, Mr. Hodges states that he has never spoken with or otherwise communicated with Mr. Brown; that he never approved the unsigned Declaration that Defendants submitted; that he decided to stay out of the dispute for business reasons; and that Mr. Brown never behaved improperly towards him, intimidated him, or counseled him not to testify. (Doc. 78-1 at ¶¶ 3–5.) Mr. Satterfield's Affadavit provides, in conclusory fashion, that he investigated the matter for his client Piggly Wiggly and found that no misconduct occurred. (*See* Doc. 78-2.) On the same day, at the request of Mr. Freeman, the Court continued its August 16, 2010 evidentiary hearing to allow Defendant Solutions to decide whether to withdraw its Motion for Sanctions.

Without seeking leave of the Court and after the close of discovery,[4] Mr. Freeman served a subpoena on Mr. Brown, pursuant to the authority of the United States District Court of South Carolina, demanding the production of documents pertaining to any communications between Mr. Brown and Piggly Wiggly. (Doc. # 81-3.) Mr. Brown objected to the subpoena, maintaining that Mr. Freeman was without authority to issue it and that the materials in question were privileged attorney work product. On August 23, 2010, Defendant Solutions filed an Emergency Motion to Compel (Doc. # 81) the documents in question.

---

[4] The Court recognizes that the events that gave rise to Defendant's Motion for Sanctions, necessitating an evidentiary hearing regarding sanctions, occurred after discovery had closed in this case. Nevertheless, the Court finds that under the circumstances, Mr. Freeman should have sought leave from the Court to re-open discovery if he found that discovery on this issue was necessary. *See* Fed. R. Civ. P. 16(b)(4).

On August 26, 2010, the undersigned held an evidentiary hearing. After performing an *in camera* inspection of the documents in question,[5] the Court orally denied Defendant's Emergency Motion to Compel (Doc. # 81). Additionally, the Court indicated that nothing in the documents constituted sanctionable conduct on the part of Mr. Brown. At the hearing, the Court heard the testimony of Mr. Brown, Defendant Hoffmann, and Mr. Freeman. The Court also admitted other evidence, including a June 28, 2010 voicemail message from Monroe Hodges to Defendant Hoffman. In the voicemail, Monroe Hodges indicated that his phone had been ringing off the hook with regard to the Declaration, and referenced Mr. Brown. In addition to testimony surrounding the conduct of Mr. Brown, the Court heard testimony regarding Plaintiff's counter-motion for sanctions, focusing on Defendant Solutions and Mr. Freeman's decision to pursue the Motion for Sanctions.

## II. APPLICABLE LAW

A. The Court's Inherent Authority

In its Motion for Sanctions, Defendant Solutions requests that the Court use its inherent authority to sanction Plaintiff and his counsel. The Supreme Court has held that the federal courts have "[c]ertain implied powers . . . which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). A primary aspect of the Court's inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45. "A court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings." *Dell, Inc. v. Elles*, No. 07-2082,

---

[5] Plaintiff had no objection to this inspection.

5

2008 WL 4613978, at *2 (6th Cir. June 10, 2008) (citing *Chambers*, 501 U.S. at 43).  The Court must exercise its inherent authority "with restraint and discretion."  *Chambers*, 501 U.S. at 44.  Furthermore, "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."  *Id.* at 49.

As the Supreme Court noted in *Chambers*, a court may impose a sanction, such as attorney's fees, when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Id.* at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)).   The Sixth Circuit has also noted that "[t]he 'imposition of inherent power sanctions requires a finding of bad faith,' . . . or conduct 'tantamount to bad faith.'"  *Dell*, 2008 WL 4613978, at *2 (quoting *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 517 (6th Cir.2002); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).

It is not improper for an attorney to attempt to contact a potential third-party witness.  Nevertheless, an attempt to interfere with, intimidate, or tamper with a potential witness is sanctionable misconduct.  *See Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498 (7th Cir. 2008) ("Trying improperly to influence a witness is fraud on the court and on the opposing party . . . .");  *Ramsey v. Broy*, No. 08-CV-0290,  2010 WL 1251199, at *4 (S.D. Ill. Mar. 24, 2010) ("Not only does witness tampering interfere with the judicial branch's ability to function properly, it is a federal crime.") (citing 18 U.S.C. § 1512(b)); *see also United States v. Vasilakos*, 508 F.3d 401, 411 (6th Cir. 2007) ("A federal court's authority to protect the integrity of its proceedings encompasses the authority to take reasonable actions to avoid intimidation or coercion of witnesses.").

As other courts have concluded, the Court places the burden of proof on the party moving

for sanctions. *See Ramsey*, 2010 WL 1251199, at *5. At the evidentiary hearing, Defense counsel maintained, and cited case law to support, that the Court should apply a preponderance of the evidence standard in determining sanctions. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-390 (1983)) ("Because the preponderance-of-the-evidence standard results in a roughly equal allocation of the risk of error between litigants, we presume that this standard is applicable in civil actions between private litigants unless 'particularly important individual interests or rights are at stake.'"); *see also Wade v. Soo Line R.R. Corp.*, 500 F.3d 559, 564 (7th Cir. 2007) (implying in dicta that sanctions pursuant to Federal Rule of Civil Procedure 37 did not require clear and convincing evidence). Nevertheless, other courts have cast doubt on whether a preponderance of the evidence standard is appropriate when a court uses inherent power to impose sanctions:

> The present case, however, involves not a ruling under Rule 37 but an exercise of a federal court's inherent authority to sanction misconduct in litigation before it; and a number of cases hold that the imposition of such a sanction (when indeed it is punitive and not merely compensatory) requires proof by clear and convincing evidence. *See Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1476-78 (D.C. Cir. 1995), and cases cited there . . . . The logic of these holdings is that in the absence of a statute or rule, the exercise of judicial authority should be governed by traditional common law or equitable principles, such as the familiar principle that fraud must be proved by clear and convincing evidence. *E.g.*, *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1120-21 (2d Cir. 1970); *Shepherd v. American Broadcasting Cos.*, *supra*, 62 F.3d at 1477.

*Ty Inc. v. Softbelly's, Inc.*, 517 F.3d at 498–99. In this case, the undersigned finds the distinction irrelevant because, for the reasons described below, sanctions against Mr. Brown would be inappropriate pursuant to either standard.[6]

---

[6] Additionally, the undersigned does not find that the question of which standard to apply affects the decision with regard to Defendant Solution and Mr. Freeman's prosecution of the Motion for Sanctions.

B.  Admissibility of Evidence in Considering Sanctions

The parties dispute the applicability of the Federal Rules of Evidence in determining sanctions.  (*See generally* Docs. # 74, 75, 85, 87.)  Plaintiff maintain, pursuant to Federal Rule of Evidence 1101, that the Federal Rules of Evidence should apply when the Court decides to hold an evidentiary hearing to consider sanctions.  (Doc. # 85 at 3–6.)  Defendant, on the other hand, contends that the United States Court of Appeals for the Sixth Circuit has found that the Federal Rules of Evidence are not strictly applicable to sanction considerations.[7]  (Doc. # 75 at 6–7 (citing *Cook v. Am. Steamphsip Co.*, 134 F.3d 771 (6th Cir. 1998)).)  The issue of whether the Rules apply matters, because, at the time of the hearing, Defendant Solutions' evidence consisted primarily of hearsay statements of Mr. Hodges as interpreted by Mr. Hoffman.  At the August 26, 2010 sanctions hearing, the Court reserved its ruling on this issue, and received all the evidence the parties offered.

Rule 1101 provides that the Federal Rules of Evidence "apply generally to civil actions and proceedings, including . . . contempt proceedings . . . ." Fed. R. Evid. 1101(b).  Rule 1101 also provides a list of miscellaneous proceedings to which the Rules do not apply, including "[p]roceedings for extradition or rendition; preliminary examinations in criminal cases; sentencing, or granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise." Fed. R. Evid. 1101(d)(3).  Some courts have found that the list in Rule 1101(d) is not exhaustive. *See, e.g.*, *Arista Records LLC v. Doe 1-27*, 584 F.Supp.2d 240, 255 (D. Me. 2008) (citing *United*

---

[7] Defendant does argue, in the alternative, that if the Court does find hearsay inadmissible it should exclude the Affidavits of Monroe Hodges and Mr. Satterfield which Plaintiff submitted on August 13, 2010.

*States v. Zannino*, No. 83-235-N-3, 1985 WL 2305, at *3 (D. Mass. June 5, 1985)); *see also*

*Forseberg v. Perfanis*, 261 F.R.D. 694, 699 (N.D. Ga. 2009) (discussing the uncertain nature of whether the Federal Rules of Evidence are applicable to a sanctions hearing).

In *Cook*, the United States Court of Appeals for the Sixth Circuit held that a district court did not violate an attorney's rights in refusing to hold an evidentiary hearing, pursuant to the Federal Rules of Evidence. *Cook*, 134 F.3d at 774. The Sixth Circuit specifically determined that even though the incident leading to sanctions occurred outside the district court's presence, the court had the discretion to determine whether an evidentiary hearing was necessary before assessing sanctions. *Id.* at 775. Finally, the Sixth Circuit allowed the lower court to base its sanctions on an incident report that contained witnesses' statements. *Id.* at 776. The *Cook* decision did not reach the issue of the applicable Rules of Evidence if a court does hold a sanctions hearing.

In performing the instant analysis, the undersigned applies the Federal Rules of Evidence and excludes hearsay testimony, including the testimony of Mr. Hoffman relating to the statements of Mr. Hodges, offered at the August 26, 2010 hearing.[8] Specifically, the undersigned finds an evidentiary hearing regarding sanctions to be analogous to contempt proceedings, where the Federal Rules of Evidence apply. The *Cook* case is not binding because the Sixth Circuit did not reach this exact issue. Nevertheless, the undersigned will consider the affidavits, submitted before the hearing, from each party. Although these affidavits are also

---

[8] This determination does not make a strong practical difference in this Report and Recommendation. Even considering all the evidence presented at the sanctions hearing, including hearsay statements, the undersigned finds that sanctions against Mr. Brown are inappropriate in this case.

9

technically out of court statements, the *Cook* decision gives the Court some discretion in this regard, as these affidavits are similar to the witness statements *Cook* allowed the lower court to rely upon.[9]  *Cook*, 134 F.3d at 766.

Although these materials are excluded for the truth of the matter asserted, the undersigned will consider all the evidence presented in evaluating the propriety of Defendant Solutions and Mr. Freeman's decision to bring the Motion for Sanctions.  Specifically, because of the uncertainty surrounding the applicability of the Federal Rules of Evidence in sanctions considerations, the undersigned finds that Mr. Freeman and Defendant Solutions could have reasonably believed such evidence would be admitted.  After all, at least one Court of Appeals has interpreted the *Cook* decision in a similar manner.  *See Jensen v. Phillips Screw Co.*, 546 F.3d 59, 66 n.5 (1st Cir. 2008) (citing *Cook* for the notion that the Federal Rules of Evidence do not "necessarily apply to factfinding in the context of sanctions").

### III. ANALYSIS

A. <u>Mr. Brown</u>

Considering the evidence as a whole, the undersigned finds that sanctions against Mr. Brown are not warranted.  Once again, an attorney acts wholly within his or her ethical boundaries by attempting to communicate with a potential third-party witness.[10]  It is only when

---

[9] The Court will exclude statements within these affidavits that it finds to be hearsay within hearsay, however.  Additionally, the Court notes that it gives Mr. Satterfield's Affidavit no weight.  Mr. Satterfield's Affidavit is highly conclusory and the undersigned finds that it is ultimately the Court's obligation to assess whether sanctionable misconduct occurred in this case.

[10] The Model Rules of Professional Responsibility do set forth guidelines addressing communications and dealings with unrepresented and represented persons.  *See* Model Rules of Prof'l Conduct 4.2 (instructing a lawyer not to communicate directly with a person it knows to

an attorney attempts to interfere in some way with that witness' testimony that misconduct occurs.

In this case, the evidence does not demonstrate that Mr. Brown attempted to prevent Monroe Hodges from providing testimony.  Rather, the evidence indicates that Mr. Brown was investigating Defendants' filing of the *unsigned* Declaration of Monroe Hodges, a witness who Defendants never identified and who Plaintiff did not anticipate would testify or participate in this case until the date of Defendants' filing.  According to Mr. Brown, the information in the Declaration was inconsistent with the facts of the case as he understood them, giving him further reason to investigate the matter.  After contacting Piggly Wiggly and receiving Mr. Hodges' number, Mr. Brown ultimately placed two telephone calls with Mr. Hodges that went unanswered.  Mr. Brown testified that he did not leave a message.

The August 13, 2010 Affidavit of Monroe Hodges further supports Mr. Brown's account of the events.  Mr. Hodges' Affidavit specifically provides:

> 3. I do not know, and have never met, spoken with or otherwise communicated with attorney Stephen H. Brown.
> 4. I now know that an unsigned document entitled Declaration of Monroe Hodges was filed with this Court on June 24, 2010.  I had never seen or approved that document prior to the time it was filed . . .
> 5 . . . . I have elected to stay out of the dispute between the parties to this action . . . The decision . . . was [my] own business decision and was not a result of any conduct by Mr. Brown as alleged by the Defendants.  To my knowledge, Mr. Brown has not acted improperly or unprofessionally in any manner related to this case.  He certainly has not coerced or intimidated me . . . .
> 6. Mr. Brown has never suggested or counseled that I should not provide my truthful testimony to this Court . . . .

---

be represented in the relevant matter); Model Rules of Prof'l Conduct 4.3 (setting forth guidelines for attorneys in dealing with unrepresented parties).  Neither of these rules prohibits a lawyer from contacting a potential third-party witness who is unrepresented in the matter.

(Doc. # 78-1 at 3–6.)

Defendant Solutions failed to satisfy its burden to demonstrate that Mr. Brown acted improperly.  Accordingly, based on consideration of the evidence as a whole, the undersigned **RECOMMENDS** that the Court **DENY** Defendant's Motion for Sanctions against Plaintiff's counsel Stephen Brown.

B.  Defendant Solutions and Mr. Freeman

In their Memorandum in Opposition, and also orally during the August 26, 2010 evidentiary hearing, Plaintiff and his legal counsel request attorneys' fees and costs as a result of Defendant Solutions and Mr. Freeman's pursuit of sanctions.  Plaintiff primarily bases his request for attorneys' fees and costs on the notion that Defendant Solutions and Mr. Freeman brought the Motion for Sanctions without any admissible evidence.  (Doc. # 74 at 11–12.)  For the sake of judicial efficiency, the Court received testimony and evidence regarding this issue during the August 26, 2010 hearing.

    1.  Rule 11

Plaintiff's request for attorneys' fees and costs rests on one basic contention: that Defendant Solution's sanction motion contains insufficient evidentiary support and is therefore an unreasonable motion.  This type of motion ordinarily would be brought under Rule 11 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 11(b)(3) (requiring that when a party presents a motion to the Court it represents "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").  Nevertheless, Rule 11 requires a party to file a motion

"separately from any other motion," and also provides for a safe-harbor period in which the opposing party has an opportunity to withdraw the allegedly improper document.  Because of this safe-harbor provision, a Rule 11 motion ordinarily "should be served promptly after the inappropriate paper is filed."  Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments).  The Advisory Committee Notes to Rule 11 further provide that "[g]iven the 'safe harbor' provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."  *Id.*

In this case, Plaintiff has not brought a separate Rule 11 motion, but instead requests attorneys' fees and costs within their Memorandum in Opposition.[11]  The Court finds that any Rule 11 motion would now be untimely, and also would have been untimely anytime after the August 26, 2010 hearing, as Defendant Solutions and Mr. Freeman would not have the appropriate "safe harbor" time to withdraw the Motion for Sanctions.  Accordingly, Rule 11 does not form an appropriate basis for sanctions in this case.[12]

2. Inherent Authority

Although Rule 11 sanctions of attorneys' fees or costs are unavailable in this case, the Court may also consider whether to sanction Defendant Solutions and Mr. Freeman under its

---

[11] Mr. Brown reiterated this request at the August 26, 2010 evidentiary hearing.

[12] The Court has considered the possibility of instituting sanctions on its own initiative pursuant to Fed. R. Civ. P. 11(c)(3).  Nevertheless, under Rule 11(c)(3), the Court is not permitted to impose a sanction of attorney's fees or costs, as Plaintiff requests.  Fed. R. Civ. P. 11(c)(4) (stating that a court may impose the payment of "attorney's fees and other expenses" to a party only "if imposed on motion"); *see also* Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments) (Rule 11 "provides that a monetary sanction imposed after a court-initiated show cause order be limited to a penalty payable to the court . . .").  Under such circumstances, the undersigned finds that it would be inappropriate to further prolong this matter by initiating show cause proceedings against Defendant Solutions and Mr. Freeman.

inherent authority.  *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510–19 (6th Cir. 2002) (allowing a court to use its inherent authority to impose sanctions when Rule 11 sanctions were procedurally unavailable); *see also Chambers*, 501 U.S. at 50 ("[N]othing in the other sanctioning mechanisms . . . warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction . . . .").  Furthermore, the Supreme Court has emphasized that inherent authority "extends to a full range of litigation abuses." *Chambers*, 501 U.S. at 46.

While inherent authority is broad in scope, as set forth above, it is generally reserved to circumstances where an attorney's behavior constitutes bad faith as opposed to mere unreasonableness.  *Id.* at 46–47.  The United States Court of Appeals for the Sixth Circuit has required conduct to be at least tantamount to bad faith to justify the imposition of inherent-authority sanctions.  *First Bank of Marietta*, 307 F.3d at 520.  "'In order to award attorney fees under this bad faith exception, a district court must find that the claims advanced were meritless, that counsel knew or should have known this, *and that the motive for filing the suit was for an improper purpose* such as harassment.'"  *First Bank of Marietta*, 307 F.3d at 512 (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir.1997)) (emphasis added).

In this case, although far from condoning Defendant Solutions and Mr. Freeman's conduct, the undersigned does not find sufficient evidence of bad faith, or conduct tantamount to bad faith, to justify inherent-authority sanctions.  Defendants and Defense counsel understandably were frustrated that Monroe Hodges, who apparently informally agreed through

oral communications to provide much of the information detailed in his unsigned Declaration,[13] ultimately decided to refrain from giving testimony in this dispute. Furthermore, the testimony of Mr. Hoffman regarding his conversations with Mr. Hodges, as well as the voicemail Mr. Hodges left Mr. Hoffman, amount to some circumstantial evidence indicating the possibility that Mr. Brown applied improper pressure on either Piggly Wiggly or Mr. Hodges. Although much of this evidence is inadmissible hearsay, based on the Sixth Circuit's decision in *Cook*, Mr. Freeman could have believed that this evidence might be admissible for the purpose of sanctions.

Nevertheless, Defendant Solutions and Mr. Freeman were overzealous, at the very least, in their prosecution of their Motion for Sanctions. Beginning during the scheduling of the June 30, 2010 status conference, Mr. Freeman indicated to the Court that Defendants would vigorously seek sanctions against Mr. Brown. It appears to the Court that Defendant Solutions and Mr. Freeman interpreted the information they possessed in the worst possible light, assuming the worst of Mr. Brown, and never took the opportunity to consider that his conduct may have been more innocent than their initial frustration led them to believe. The undersigned finds that it was primarily this mind-set, on the part of Defendants and their counsel, that propelled this matter to this undesirable stage.

---

[13] Based on the evidence presented, the undersigned finds some ambiguity as to what extent Mr. Hodges actually agreed to provide testimony through declaration to the Court. Nevertheless, the undersigned concludes from the testimony of Mr. Hoffman and Mr. Freeman at the evidentiary hearing that Defendants had a good faith belief that Mr. Hodges had agreed to the information in the Declaration. Additionally, Defendants were open to the Court regarding the unsigned nature of the Declaration. Consequently, to the extent Plaintiff seeks sanctions with regard to the filing of the unsigned declaration, the undersigned finds no sanctionable conduct on the part of Defendants. Finally, to the extent Plaintiff seeks sanctions based on Defendants' failure to earlier identify Mr. Hodges as a witness, the Court has already stricken Mr. Hodges unsigned Declaration and finds that any further action against Defendants, for this conduct, would be inappropriate.

On August 13, 2010, Plaintiff submitted the Affidavit of Monroe Hodges.  (*See* Doc. # 78-1.)  In the Affidavit, Mr. Hodges detailed that he had never communicated with Mr. Brown and that his decision to stay out of this case was not a result of any conduct on the part of Mr. Brown.  (*Id.*)  Based on the combination of Mr. Hodges' Affidavit; Mr. Brown's earlier Affidavit; and the evidence Defendants and Mr. Freeman ultimately presented at the August 26, 2010 hearing, the undersigned finds it incomprehensible that Mr. Freeman could have anticipated any realistic chance of success on the Motion for Sanctions.  Although Mr. Freeman might have considered Mr. Hodges' Affidavit inadmissible hearsay, this would also mean that all the hearsay evidence he wished to offer would also be inadmissible.  Furthermore, Mr. Freeman's own voicemail to Mr. Brown, which Plaintiff presented at the hearing, indicated that after reading the Affidavit Mr. Freeman was sorry for his actions towards Mr. Brown.[14]  Consequently, the undersigned finds that, at the latest, Defendant Solutions and Mr. Freeman should have withdrawn their Motion for Sanctions after Plaintiff filed Mr. Hodges' Affidavit.

Although Defendant Solutions and Mr. Freeman's pursuit of sanctions after August 13, 2010 appears to have been unreasonable, the undersigned declines to invoke the Court's inherent authority to issue sanctions.  The record does not bear out that Defendant Hoffman or Mr. Freeman acted in bad faith, for improper purposes, or with any other ill motive.  Mr. Freeman's telephone call to Mr. Brown implies that he considered withdrawing Defendant Solutions' Motion for Sanctions after reading Mr. Hodges' Affidavit.  During his testimony at the hearing, however, Mr. Freeman indicated that after speaking with his client he was once again confident that Mr. Brown committed some type of misconduct.  While it is possible that an improper

---

[14]  Mr. Freeman did also provide that he would need to speak to his client before taking any definitive action with regard to the Motion for Sanctions.

16

purpose motivated Mr. Freeman's prosecution of the Motion for Sanctions after this point, it is just as possible, and in fact appears more likely, that after speaking to his client, Mr. Freeman simply was re-convinced that his client's testimony justified the Motion for Sanctions.[15] In the end, there is simply too little evidence for the undersigned to conclude that Defendant Solutions' and Mr. Freeman's actions were the product of anything worse than unreasonable decision-making, poor judgment, and over-zealous advocacy.

## IV.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Defendant Reliant Inventory Solutions' Motion for Sanctions (Doc. # 72) and Plaintiff's counter-request for sanctions.  It is also **RECOMMENDED** that the Court **DENY** Plaintiff's Motion in Limine to Exclude Hearsay Testimony (Doc. # 85) as moot in light of this Report and Recommendation.

## V.  NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

---

[15] Mr. Freeman's subsequent subpoena of Mr. Brown's documents supports the notion that Mr. Freeman genuinely believed that some misconduct, whether through direct or indirect influence of Mr. Hodges, had occurred.

17

waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

November 15, 2010                                   /s/ *Elizabeth A. Preston Deavers*
                                                                    Elizabeth A. Preston Deavers
                                                                    United States Magistrate Judge