UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Richard A. Garvais, Jr.,

    Plaintiff,

-v-                                                      Case No. 2:09–cv–389

Reliant Inventory Solutions, Inc.,           Judge Michael H. Watson

    Defendants.

## OPINION AND ORDER

Plaintiff in this diversity action asserts Defendants breached the employment agreement they entered with Plaintiff and breached their fiduciary duty toward Plaintiff as a minority shareholder.[1] Plaintiff seeks damages and an accounting. Defendants bring counterclaims against Plaintiff for breach of contract and unjust enrichment.[2] Both sides move for summary judgment on the opposing side's claims. For the following reasons, the Court grants both sides' summary judgment motions.

### I. BACKGROUND

**A. The Parties**

Plaintiff Richard Garvais is a citizen of South Carolina. Defendants Reliant Inventory Solutions ("Solutions") and Reliant Inventory Services ("Services")

---

[1]Plaintiff also sought a declaratory judgment declaring certain restrictive covenants of the employment agreement to be unenforceable. The parties settled that claim, however, and the Court deems it to be dismissed.

[2]In their memorandum in opposition to Plaintiff's motion for summary judgment, Defendants voluntarily dismiss their breach of contract claim concerning the forum selection clause. PAGEID # 1167, ECF No. 62.

(collectively, "Reliant Corporations") are Ohio corporations with their principal places of business in Ohio. The Reliant Corporations provide inventory auditing services to grocery stores, convenience stores, and pharmacies.

Defendant Barrett Hoffman is a citizen of Wisconsin, and Defendant Stephen Miller is a citizen of Florida. Hoffman and Miller are directors of the Reliant Corporations as well as the majority shareholders. They founded Services in 2002. In June 2006, Hoffman and Miller incorporated Solutions for the purpose of using Garvais' contacts with large grocery chains to expand business. Hoffman and Miller aver they set up Solutions as a separate corporation so Garvais would not benefit from their hard work building Services from the ground up.

### B. The Agreement

Garvais entered the Employment Agreement ("Agreement"). The Agreement states the parties to it are Garvais and Services. Defendants assert Services is named a party to the Agreement only as a result of a typo and that the parties understood the contract was between Garvais and Solutions, noting Garvais named Solutions as his former employer when he sought unemployment benefits and named Solutions as the only Defendant in his initial Complaint. Garvais contends Solutions was not incorporated and did not exist as a legal entity when the Agreement was executed. He also maintains Defendants failed to observe corporate formalities and notes all contracts with Solutions' clients were with Services.[3]

---

[3] The Court need not resolve the conflict on this issue because this case turns on other issues.

Defendants maintain they terminated Garvais' employment for cause based on his alleged breach of the Agreement. Garvais contends Defendants breached the Agreement by terminating his employment *without* just cause, and by failing to offer him Solutions stock and bonuses as provided by the Agreement. The parties refer to several provisions of the Agreement in support of their claims. First, the Agreement provides Garvais may be terminated only for the following conduct:

> i. The commission of a fraud, misrepresentation, embezzlement, or the like upon the Corporation;
>
> ii. Material injury to the Corporation or its goodwill;
>
> iii. The commission of a crime involving moral turpitude or any act involving dishonesty;
>
> iv. A violation or breach of any term or condition of Associate's employment as set forth in this Agreement, the Corporation's published policies and the Corporation's employee manuals.

Am. Compl., Ex. 1, PAGEID # 262, ECF No. 44. Exhibit A to the Agreement is titled "Job Description" and lists twelve specific duties and responsibilities but also indicates "other duties may be assigned." Am. Compl., Ex. 1, PAGEID # 266, ECF No. 44. The twelfth duty is "advances company sales." *Id.* Paragraph I of the Agreement indicates Garvais was hired to be vice president, and refers to Exhibit A as describing the duties and responsibilities he agreed to perform. The same paragraph further states Garvais would "also be responsible for performing such additional duties as the Corporation may from time to time assign to him." Am. Compl., Ex. 1, PAGEID # 260, ECF No. 44.

In addition, the Agreement provides Garvais would receive company voting stock as part of his remuneration. Am. Compl., Ex. 1, PAGEID # 261, ECF No. 44. Garvais asserts Defendants never offered him the stock. Defendants contend they offered

Garvais stock, but he refused to accept it because he feared potential adverse tax consequences. The Agreement further provides that upon the termination of Garvais' employment for cause, the company would buy back any stock for $20. Am. Compl., Ex. 1, PAGEID # 262, ECF No. 44.

Moreover, the Agreement stated Garvais would receive an annual bonus based on net profits. Defendants assert Solutions did not earn a profit in 2006 or 2007 but concede Garvais is owed a bonus of $478.50 for 2008.

### C. Garvais' Employment

The parties present diametrically opposing accounts of Garvais' employment with the company. Defendants assert Garvais failed to make any effort to develop new clients, including smaller clients, which Defendants maintain was Solutions' business model, and without which Solutions could not make a profit. To that end, Defendants aver they provided Garvais access to their nationwide database of potential customers. Despite having done so, Defendants maintain Garvais ignored their directives to pursue new customers and made fewer than a dozen cold calls in the two and one half years he worked for Solutions. They further assert Garvais procured only three new clients during the entire period of his employment with Solutions, one of which amounted to a sale of only $750. At one point, Garvais indicated he was too busy supervising Solutions' operations to make sales calls and requested Defendants hire a full-time office manager to free up his time. Garvais allegedly said if Defendants hired an operations manager, he would bring in more business than they could handle. Defendants hired a manager as Garvais requested, but the promised sales never materialized.

Defendants say they also provided Garvais the opportunity to obtain two major clients, but Garvais failed to act in a timely fashion to obtain their business. First, Hoffman instructed Garvais to meet with Garvais' friend and former colleague, Bill Fischer, who worked for the Winn Dixie grocery store chain. Fisher invited Garvais to play golf with him so they could discuss business and indicated he would introduce Garvais to his superiors at Winn Dixie. Garvais never followed up, telling Hoffman he forgot to do so and that he had lost Fisher's phone number.

On another occassion, Hoffman learned the grocery store chain Piggly Wiggly was unhappy with its inventory service, and he directed Garvias to meet with someone at Piggly Wiggly to attempt to obtain its business. Garvais scheduled a meeting but forgot about it and did not attend it. After waiting six months, he contacted Piggly Wiggly again but the business refused to return his calls at that point.

Defendants aver that for these reasons, they terminated Garvais' employment on January 15, 2009.

Lastly, Defendants assert that after they terminated Garvais, they discovered he had provided Southern Family Markets ("SFM") an unreliable and inaccurate inventory report. Defendants contend Garvais provided the report to SFM even though he lacked the data, conversion tables, and computer program necessary to properly prepare an accurate report.

Garvais paints a starkly different picture, characterizing himself as an exemplary employee. First, Garvais insists he was not hired to be a salesman, noting that advancing company sales was mentioned as the last of the twelve job duties enumerated in the Agreement. In addition, Garvais asserts he generated revenue of

over $291,000 in 2006, was responsible for revenue of more than $980,000 in 2007, and over $1.5 in 2008.[4] Garvais denies he engaged in any misconduct during his employment that would constitute cause for termination. He also denies any wrongdoing with respect to the inventory report he provided SFM.

## II. STANDARD OF REVIEW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 438–39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d. 479, 487 (6th Cir. 2006). The Court disregards all evidence

---

[4]The revenue Garvais refers to came from clients Garvais brought to Solutions at its inception, not new sales Garvais made during his employment.

favorable to the moving party that the jury would not be required to believe. *Reeves,* 530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

### III. DISCUSSION

#### A. Defendants' Summary Judgment Motion

With one exception noted below, Defendants move for summary judgment on all of Garvais' claims against them, which include breach of contract, breach of fiduciary duty owed to a minority shareholder, and a demand for an accounting. The Court will address each claim in turn.

#### 1. Breach of contract

Garvais asserts Defendants breached the Agreement in three ways: (1) they terminated his employment without just cause; (2) they failed to offer him company stock; and (3) they failed to pay him bonuses. Defendants maintain they had ample cause to terminate Garvais' employment, they offered stock to Garvais but he refused to accept it, and Garvais is entitled only to a bonus of $478.50 for 2008, the only year Solutions earned a profit.

The Agreement, which both sides agree is valid and binding, provides Ohio law governs their dispute, and the parties otherwise rely on Ohio law in their briefs. Accordingly, the Court will determine this matter applying the law of Ohio. See *Express Packaging of Oh., Inc. v. Am. States Ins. Co.*, 800 F. Supp. 2d 886, 890 (N.D. Ohio 2011).

The essential elements of a breach of contract claim under Ohio law are: (1) existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) the plaintiff suffered damage or loss. *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App. 3d 213, 228–29 (10 App. Dist. 2010). The parties acknowledge the existence of a contract.

### a. Termination of employment

Defendants argue they are entitled to summary judgment on Garvais breach of contract claim concerning his termination because the record establishes as a matter of law that Garvais failed to fulfill his own contractual duties and therefore just cause existed to terminate his employment. Defendants contend, *inter alia*, Garvais failed to follow their specific directives to pursue new customers, including sales to smaller clients and cold calls, in accordance with Defendants' business model. They note Garvais made fewer than a dozen cold calls in the two and one half years he worked for Solutions and obtained only three new clients during the entire period of his employment with Solutions, one of which amounted to a sale of only $750. Defendants maintain Garvais' failure to perform those duties was a breach of the Agreement's provision requiring Garvais to perform "such additional duties as the Corporation may from time to time assign to him." Am. Compl., Ex. 1, PAGEID # 260, ECF No. 44.

In arguing he did not breach the agreement, Garvais places great emphasis on the amount of revenue he was responsible for generating for Solutions through clients he brought to Solutions at its inception. That Garvais brought clients to Solutions at its inception, however, does not excuse his failure to work to make new sales as specifically instructed by Hoffman and Miller. Defendants' business strategy was to increase sales to all customers, including smaller ones, to fill in excess capacity so Solutions could earn a profit. Garvais acknowledges he was instructed to work to make additional sales but did not do so in part because he disagreed with that strategy. Garvais Dep. 297–300, PAGEID # 588, ECF No. 58-7.

Garvias' failure to pursue new sales as specifically instructed, as well as his inexplicable failure to follow up on leads for the major grocery chains Winn Dixie and Piggly Wiggly, constitute a breach of the Agreement's provision requiring him to perform additional duties assigned to him. That breach is cause for his termination as a matter of law.[5] Defendants are therefore entitled to summary judgment on Garvais' breach of contract claim to the extent it is based on termination without just cause.

### b. Company stock

Garvais also asserts Defendants breached the Agreement by failing to offer him company stock. The claim lacks merit because Garvais testified unmistakably at his deposition that he refused to accept stock from Defendants for fear of adverse tax consequences and declined to sign paperwork attendant to the transfer of shares which

---

[5]The Court sees no need to determine whether the allegedly botched inventory report for SFM, which Defendants discovered after they terminated Garvais, provides additional just cause for the termination.

Defendants had prepared and presented to him. Garvais Dep. 161–64, 170–73 PAGEID # 554, 556–57, ECF No. 58-7. Garvais points to his declaration, made after Defendants moved for summary judgment, in which he states he was never offered stock. That declaration, which directly contradicts his prior sworn testimony, does not create a genuine issue of material fact. See *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 588 (6th Cir. 2009). Even if the declaration does not directly conflict with prior testimony, it cannot fairly be said Defendants failed to offer Garvais stock as required under the Agreement. While Defendants did not literally hand Garvais stock certificates, they nonetheless offered it to him. For these reasons, Defendants are entitled to summary judgment on Garvais' breach of contract claim regarding his right to receive company stock.[6]

### c. Bonuses

The Agreement provides Garvais would earn bonuses based on profit. Defendants concede they owe Garvais $478.50 for 2008, the only year Solutions earned a profit. Solutions lost money in 2006 and 2007, so no bonus was owed to Garvais for those years. Garvais presents no evidence to the contrary. With the exception of the $478.50 bonus Defendants admit owing Garvais, Defendants are entitled to summary judgment on Garvais breach of contract claim relating to bonuses.

### 2. Breach of Fiduciary Duty

Garvais asserts Defendants breached ther fiduciary duty they owed him as a

---

[6] In addition, since Defendants did not wrongfully terminate Garvais, they had a contractual right to repurchase any stock transferred to Garvais for $20. Hence, if Garvais succeeded on his claim concerning the offer of stock, his damages would be limited to $20.

minority shareholder. Defendants argue Garvais' fiduciary duty claim fails because Garvais never owned company stock and was therefore never a minority shareholder to whom Defendants owed a fiduciary duty. They also assert no breach of duty occurred.

To prevail on a claim of breach of fiduciary duty, a plaintiff must demonstrate: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) injury proximately caused by the breach. *Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App. 3d 213, 230 (10th Dist. 2010). Under Ohio law, majority shareholders of closely held corporations owe minority shareholders a heightened duty of good faith and loyalty. *Crosby v. Beam*, 47 Ohio St. 3d 105, 108 (1989). Specifically, "majority shareholders owe minority shareholders good faith, loyalty, disclosure, and an obligation to refrain from self-dealing." *Franks v. Rankin*, Nos. 11AP-934, 11AP-962, 2012 WL 1531031, at *7 (Ohio Ct. App. 10th Dist. May 1, 2012) (quotation marks omitted).

Garvais concedes he never owned shares of company stock and was therefore never a minority shareholder. Nonetheless, that alone might not warrant dismissal of Garvais' claim. *See Thomas v. Albert C. Thomas, Inc.*, No. L-11-1064, 2012 WL 3765002, at *9 (Ohio Ct. App. 6th Dist. Aug. 31, 2012) (issuance of a stock certificate is not always necessary to establish corporate ownership). Garvais' claim fails in any event because no breach of fiduciary duty occurred. Specifically, Garvais' breach of fiduciary duty claim rests entirely on his assertion that he was wrongfully denied shares of company stock and was terminated without just cause. As discussed above, the record establishes Defendants did not, in fact, fail to offer company stock to Garvais; rather, Garvais refused to accept the stock for fear of adverse tax consequences. In addition, there is no genuine issue of material fact that Defendants had just cause to

terminate Garvais' employment. Aside from those two matters, Garvais does not plead or identify any other conduct on Defendants' part that would constitute a breach of fiduciary duty to a minority shareholder.[7] Defendants are therefore entitled to summary judgment on Garvais' breach of fiduciary duty claim.

### 3. Accounting

In his remaining claim, Garvais seeks the remedy of an accounting. Defendants assert Garvais is not entitled to an accounting because he was already afforded an adequate remedy at law to obtain the same information, namely, discovery under the Federal Rules of Civil Procedure. Defendants are correct. As one court observed:

> In general, an accounting is defined as "a species of disclosure, predicated upon the legal inability of a plaintiff to determine how much, if any, money is due him from another." *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir.1972). It is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate. *Id*. Under Ohio law, "where there is an adequate remedy at law, an equitable remedy is improper." *McNulty v. PLS Acquisition Corp.*, Nos. 79025, 79125, 79195, 2002 WL 31875200, ¶ 80 (Ohio App. 8 Dist. Dec.26, 2002). As explained in *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06–CV–00126, 2007 WL 1144866, at *4 (S.D.Ohio April 16, 2007):
>
>> It will be the rare case where an equitable accounting lies, since legal remedies are more adequate; discovery is liberal under the Federal Rules of Civil Procedure; and the requirement of inadequacy of remedy at law remains the same . . . . Defendants' case is not one of those "rare cases" since their damages are readily ascertainable through discovery.
>
> *See also Bradshaw*, 454 F.2d at 79 ("[An accounting] is an extraordinary remedy, and like other equitable remedies, is available only when legal remedies are inadequate . . . . the liberal discovery procedures of the Federal Rules operate to make the legal remedies more 'adequate' than before.");

---

[7]Garvais alludes to Defendants charging a fifteen percent management fee to Solutions. The management fee is specifically provided for in the Agreement, and the amount of the fee was disclosed before Garvais entered the Agreement. Moreover, Garvais does not plead the fee constitutes a breach of fiduciary duty.

> *Boland v. First Winthrop Corp.*, 2010 U.S. Dist. LEXIS 77609, *7–8, 2010 WL 3037076 (S.D. Ohio Aug. 2, 2010) ("Equitable accounting actions are rare since the advent of the Federal Rules of Civil Procedure because the liberal standards of the Rules generally afford plaintiffs the opportunity to obtain discovery relevant to their asserted claim."); *Digital 2000, Inc. v. Bear Commc'ns., Inc.*, 130 F. App'x 12, 23 (6th Cir.2005) ("In light of the broad discovery available to litigants, accounting actions are of dubious utility.") (relying on Michigan state law).

*Lebo v. Impac Funding Corp.*, No. 5:11CV1857, 2012 WL 630046, at *8 (N.D. Ohio Feb. 8, 2012). Garvais does not cogently respond to Defendants' argument, and the Court sees no reason discovery under the Federal Rules of Civil Procedure was not an adequate remedy to determine what, if anything, Defendants owe him in the form of bonuses. The Court therefore grants summary judgment in favor of Defendants on Garvais' claim for an accounting.

In sum, Defendants are entitled to summary judgment on all of Garvais' claims except Defendants admit owing Garvais a bonus of $478.50 for 2008.

## B. Garvais' Motion for Summary Judgment

Defendants assert claims of breach of contract and unjust enrichment against Garvais. Garvais moves for summary judgment on both claims.

### 1. Breach of Contract

Garvais argues he is entitled to summary judgment on Defendants' breach of contract claim on the ground Defendants fail to adduce evidence of damages. It is beyond dispute that a party seeking to recover for breach of contract must establish damages proximately caused by the breach. *See Wells Fargo Bank, N.A. v. Sessley*, 188 Ohio App. 3d 213, 228–29 (10th Dist. 2010).

A debacle ensued in this case after Defendants attempted to obtain an affidavit from Monroe Hodges, a Piggly Wiggly employee, in an effort to respond to Garvais' argument that no evidence of breach of contract damages was forthcoming. Defendants filed an unsigned affidavit they attributed to Hodges, but he later declined to sign it. The Court will not recount that entire fiasco, which included, *inter alia*, a motion for sanctions by one side, a motion for attorney fees and costs by the other, and a full evidentiary hearing on the issue. The matter is described in detail and adjudicated in the Magistrate Judge's Report and Recommendation ("R & R") and the Court's order adopting the R & R.

In the end, Defendants have failed to establish the essential element of damages with respect to their breach of contract claim. Consequently, Garvais is entitled to summary judgment on that claim as a matter of law.

### 2. Unjust Enrichment

Defendants also assert Garvais was unjustly enriched because he received compensation without performing the work he was directed to do. Garvais contends Defendants may not use unjust enrichment to force him to return income he received pursuant to the Agreement. The Court agrees.

Ohio law provides unjust enrichment lies where a party retains a benefit which belongs to another as a matter of equity and justice. *Liberty Mut. Ins. Co. v. Indus. Comm'n. of Ohio*, 40 Ohio St. 3d 109, 110–11 (1988). But absent fraud, bad faith, or illegality, unjust enrichment is not available where the parties' legal relationship is governed by a valid and enforceable contract. *DuBrul v. Citrosuco N. Am., Inc.*, No. 1:12cv25, 2012 WL 3811942, at *18 (S.D. Ohio Sept. 4, 2012). The parties agree the

Agreement is a valid, enforceable contract. And Defendants have not come forward with evidence that Garvais engaged in fraud, bad faith, or illegality that would warrant an exception to the rule that the existence of a binding agreement precludes their unjust enrichment claim.

For the above reasons, the Court holds that Garvais is entitled to summary judgment on both of Defendants' remaining claims against him.

## IV. DISPOSITION

Based on the above, the Court **GRANTS** Defendants' and Garvais' motions for summary judgment.

The Clerk shall enter final judgment in favor of Garvais in the amount of $478.50 and dismissing this action in its entirety with prejudice.

The Clerk shall remove ECF Nos. 58 and 59 from the Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**